UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BARRY JACK SMITH,<br><br>                      Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,[1]<br>Acting Commissioner of Social Security,<br><br>                      Defendant. | Case No. 3:23-cv-00203-CLB<br><br>**ORDER DENYING MOTION TO REMAND AND GRANTING CROSS-MOTION TO AFFIRM**<br><br>[ECF Nos. 16, 20] |

       This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Barry Jack Smith's ("Smith") application for disability insurance benefits pursuant to Titles II of the Social Security Act. Currently pending before the Court is Smith's motion for reversal and remand. (ECF No. 16.) The Commissioner filed a response and cross-motion to affirm, (ECF Nos. 20, 21)[2], and Smith replied. (ECF No. 25). Having reviewed the pleadings, transcripts, and the Administrative Record ("AR"), (ECF No. 13), the Court concludes that the Commissioner's finding that Smith could perform other work that exists in significant numbers in the national economy was supported by substantial evidence. Therefore, the Court denies Smith's motion for remand, (ECF No. 16), and grants the Commissioner's cross-motion to affirm, (ECF No. 20).

**I.    STANDARDS OF REVIEW**

      **A.    Judicial Standard of Review**

       This court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854

---

[1]    Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2]    ECF Nos. 20 and 21 are identical documents.

(9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B.   Standards Applicable to Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of their claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform their prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits the individual from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also

consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four to determine whether the individual has the RFC to perform their past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform their past work, then a finding of not disabled is made. If the individual is unable to perform any past relevant work or does not have any past relevant work, then the analysis proceeds to the fifth and final step. *See Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017).

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the individual is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## II.     CASE BACKGROUND

### A.     Procedural History

Smith applied for disability insurance benefits ("DIB") on December 12, 2017, with an alleged disability onset date of May 15, 2016. (AR 23, 124.) Smith's application was denied initially on May 18, 2018, and upon reconsideration on December 12, 2018. (AR 117-54.) Smith subsequently requested an administrative hearing and on May 3, 2022,

Smith and his attorney appeared at a telephonic hearing before an ALJ. (AR 54-83.) A vocational expert ("VE") also appeared at the hearing via telephone. (*Id.*) The ALJ issued a written decision on October 21, 2020, finding that Smith was not disabled because he could perform other work that exists in significant numbers in the national economy. (AR 22-44.) Smith appealed, and the Appeals Council denied review. (AR 8-11.) Accordingly, the ALJ's decision became the final decision of the Commissioner. Having exhausted all administrative remedies, Smith filed a complaint for judicial review on May 17, 2023. (*See* ECF Nos. 1, 7.)[3]

### B. ALJ's Decision

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 22-44.) Ultimately, the ALJ disagreed that Smith has been disabled from May 15, 2016, the alleged onset date, through the date of his decision. (AR 43.) The ALJ held that, based on Smith's RFC, age, education, and work experience, Smith could perform other work that exists in significant numbers in the national economy. (AR 42-43.)

In making this determination, the ALJ started at step one. Here, the ALJ found Smith had not engaged in substantial gainful activity during the period from his alleged onset date of May 15, 2016, through his date last insured of September 30, 2018. (AR 26.) At step two, the ALJ found Smith had the following severe impairments: emphysema; congestive heart failure; post concussive syndrome; obstructive sleep apnea; heart disease; vertigo; bilateral hip osteoarthritis (replacements in September 2019 and February 2020); and obesity. (AR 26-28.) At step three, the ALJ found Smith did not have an impairment or combination of impairments that either met or medically equaled the severity of those impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (AR 28.)

Next, the ALJ determined Smith has the RFC to perform sedentary work as

---

[3] ECF No. 7 is a corrected image of the complaint.

defined by 20 CFR 404.1567(a) except:

> he is capable of walking/standing 2 hours in an 8- hour workday; occasional postural activity, except no crawling or climbing of ladders/ropes/scaffolds; frequent exposure to temperature extremes, vibrations, pulmonary irritants, and hazards; and off task 3-5% of the workday.

(AR 28.)

The ALJ found Smith's medically determinable impairments could reasonably be expected to cause the symptoms alleged; however, Smith's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 29.) In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, and factors weighing against Smith's credibility. (AR 28-42.) The ALJ then determined that Smith is capable of performing past relevant work as a Financial Aid Counselor. (AR 42-43.) Consequently, the ALJ's analysis stopped at step four and did not proceed to step five. *See Laborin*, 867 F.3d at 1153. Accordingly, the ALJ held that Smith had not been under a disability from May 15, 2016, the alleged onset date, through September 30, 2018, the date last insured, and denied Smith's claim. (AR 43-44.)

### III.    ISSUE

Proceeding *pro se*, Smith seeks judicial review of the Commissioner's final decision denying DIB under Titles II of the Social Security Act.[4] (ECF No. 16.) Smith raises five issues for this Court's review:

(1)    Has my case even been adjudicated, if so, how much of it was my case and not the facts from another case on the ALJ docket?

(2)    Has an error occurred?

---

[4]    Although Smith is proceeding *pro se* in the instant proceeding, Smith was represented by an attorney during the ALJ's hearing. (AR 54-83.)

7

     (3)    Should the court decide to remand my claim, can my onset date be changed due to medical research that was unavailable to me at the time of filling (sic) my disability claim?

     (4)    What options of remedy are available to me if the court finds errors were made in my hearing?

     (5)    Can the court/ will the court decide my case and grant my disability claim to the earliest possible date?

(*Id.* at 3-4.)

However, these five points can be narrowed and distilled into three areas: (1) was Smith's case fully adjudicated using facts from Smith's records; (2) can Smith's disability onset date be changed; and (3) did the ALJ make an error in denying Smith benefits which would require the Court to remand the case. The Court will address the three areas of argument in turn.

**IV.  DISCUSSION**

The Court interprets Smith's motion for remand as asserting the ALJ made errors in denying his disability claim. As Smith is proceeding pro se, the Court construes his filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). However, the motion for remand is very brief and does not provide the Court with any specific alleged errors. (*See* ECF No. 16.) In the argument portion of Smith's motion for remand or reversal, Smith writes, in full:

> My arguement (sic) is clear, many errors have been made with evidence to prove the point I may not have even had my case adjudicated. I beleive (sic) any reasonable person would agree this decision is wrong, and I ask the court to overturn/reverse in your ruling on this case."

(*Id.* at 5.)

Smith also attaches exhibits to his motion for remand. (*Id.* at 7-82.) One of the exhibits is a copy of the ALJ's decision with handwritten objections written in the margins. (*Id.* at 11-32.) In response to Smith's motion for remand, the Commissioner addresses some of the handwritten objections. (*See* ECF No. 20.) However, as some of the annotations are vague, such as underlining sentences and writing "Really?" and "Not true," (*E.g.* ECF No. 16 at 29), the Commissioner construes these notations as objecting

to those portions of the ALJ's decision. (*See* ECF No. 20.) Additionally, the Commissioner responded to allegations of errors contained in Smith's correspondence to the Appeals Council. (*Id.*; AR 459-68.)

Where a petitioner is pro se, the court has "an obligation where the petitioner is pro se … to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam). The Commissioner's motion to affirm is very thorough in its attempt to address any possible objection levied by Smith. (*See* ECF No. 20.) However, liberal construction of the pleadings does not mean the Court, or the Commissioner, should construct Smith's arguments for him. A claimant waives any issues which were not raised before the district court. *Gregor v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006).

Nevertheless, as the Commissioner has moved for the Court to affirm the decision of the ALJ, the Court must review the ALJ's decision as a whole. The Commissioner's decision cannot be affirmed "simply by isolating a specific quantum of supporting evidence." *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989) (internal quotation marks and citation omitted); *see also Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012). The court must consider the record as a whole. *See Ghanim*, 763 F.3d at 1160; *Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986). Therefore, in evaluating Smith's motion for remand and the Commissioner's motion to affirm, the Court will review the final decision of the Commissioner and the record as a whole to determine if the decision is not supported by substantial evidence or is based on legal error. *See* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

### A.     Smith's Case Was Fully Adjudicated Using Only His Medical Records

First, the Court will address Smith's question about whether his case was fully adjudicated and decided using "facts from another case on the ALJ docket." (ECF No. 16

at 3-4.) Having reviewed the ALJ's written decision and the AR, it is clear the ALJ's decision was based on Smith's medical records. Smith does not identify, nor can the Court find, the presence of any records in the AR which do not belong to Smith. The ALJ thoroughly discussed Smith's medical records and noted where there were inconsistencies between provider reports. (AR 28-42.) As detailed above, Smith's claim for disability followed the proper procedures: an initial determination (20 C.F.R. § 404.905), a redetermination (*id*. § 404.921), a request for a hearing before an ALJ (*id*. § 404.933), a hearing before an ALJ (*id*. § 404.944), a hearing decision (*id*. § 404.955), request for review by the Appeals Council (*id*. §§ 404.955(b), 404.968), and an Appeals Council denial of review (*id*. § 404.981). (*Supra* Section II.A.) Therefore, it is clear that Smith's case was fully adjudicated using only his medical records.

### B.  Alleged Disability Onset Date

Next, Smith raises the issue of whether his disability onset date can be adjusted or moved to the earliest possible date. (ECF No. 16 at 3-5.) At the hearing, Smith was represented by counsel, who confirmed with both the ALJ and Smith that the alleged onset date was May 15, 2016. (AR 58-59, 61.) "[W]hen claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended); *see also Shaibi*, 883 F.3d at 1109 (explaining *Meanel* remained binding on the court with respect to proceedings before an ALJ). Here, not only did Smith's counsel fail to raise an issue with the alleged disability onset date, Smith's counsel actually confirmed that the correct date is May 15, 2016. Therefore, the alleged disability onset date may not be adjusted or moved and remains May 15, 2016.

### C.  The ALJ's Decision is Supported by Substantial Evidence

As explained above, the Court must determine whether the ALJ's decision is supported by substantial evidence in the record in order to rule on the Commissioner's motion to affirm the decision of the ALJ. Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably

drawn from the record. *Batson*, 359 F.3d at 1193. Substantial evidence means more than a mere scintilla, but less than a preponderance. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza,* 50 F.3d at 749 (citation omitted).

### 1.     The ALJ Reasonably Found Smith Had Mild Mental Limitations

First, the Court will address the ALJ's evaluation of Smith's mental limitations. The second step of the disability evaluation process addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits the individual from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; SSRs 85-28 and 96-3p. In evaluating the severity of mental impairments, a special procedure must be followed at each level of administrative review. *See* 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the ALJ evaluates a claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [claimant has] a medically determinable mental impairment[]." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). The ALJ must also "specify the symptoms, signs, and laboratory findings that substantiate the presence of [each determined] impairment and document [the] findings . . . ." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).

Next, the ALJ rates "the degree of functional limitation resulting from [claimant's] impairment." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). Rating the degree of functional limitation is a highly individualized process that requires the ALJ to consider all relevant evidence to determine the extent to which a claimant's impairment interferes with their "ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(c), 416.920a(c). There are four broad functional areas in which the ALJ will rate the degree of functional limitation: "Understand, remember, or

apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id*. The ALJ rates the degree of limitation in each of the four areas using a five-point scale: "None, mild, moderate, marked, and extreme." *Id*. After determining the degree of functional limitation, the ALJ then determines the severity of the mental impairment. *See* 20 C.F.R. §§ 404.1520a(d), 416.920a(d).

In this case, the ALJ found that although Smith's records show the medically determinable impairment of major depressive disorder, it did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and was therefore nonsevere. (AR 26-28.) In so doing, the ALJ followed the necessary steps for evaluating a mental impairment. The ALJ evaluated each of the four broad functional areas and found that Smith had either mild or no limitations. (*Id.* at 27-28.) The ALJ explained each degree of limitation using citations to medical records and hearing testimony. (*Id.*) In conclusion, the ALJ found Smith's mental limitations were nonsevere because the claimant's medically determinable mental impairment caused no more than "mild" limitation in any of the functional areas and the evidence did not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities. (*Id.* at 27.) Additionally, the ALJ's determination is supported by the conclusions of the state psychological consultants, which the ALJ found persuasive, that Smith did not have a severe medically determinable mental impairment. (*Id.* at 41.)

Here, the ALJ properly supported his determination using inferences reasonably drawn from the record, and therefore his determination is supported by substantial evidence. *Batson*, 359 F.3d at 1193 ("Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record."). Therefore, the Court must affirm the determination of the ALJ that Smith has only mild limitations.

///

///

///

### 2. The ALJ's Decision at Step Three is Supported by Substantial Evidence

Next, the Court will evaluate the ALJ's decision at step three. At third step, the ALJ must determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step. The claimant bears the burden of proving a disability in steps one through four. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step three, the ALJ explained there is no medical evidence in the record that documents the listing-level severity meeting the criteria of any listed impairments. (AR 28.) The ALJ also noted that no State agency medical consultant documented that Smith's impairments met or medically equaled any listing. (*Id.*) Additionally, although obesity is not a listed impairment, the ALJ explained he considered whether Smith's history of obesity met or equaled any listed impairment. However, the ALJ found no evidence in the record showed specific clinical signs and diagnostic findings required to meet or equal the listing severity of any musculoskeletal, respiratory, or cardiovascular listing affected by obesity. (*Id.* (citing SSR 19-2p).)

Here, the Court will discuss the many pages of medical research concerning CTE attached to the motion to remand. (ECF No. 16 at 33-81.) In his reply to the motion for remand, Smith argues that "[t]hose research pages contained enough medical and scientific facts to prove [his] case." (ECF No. 25 at 2.) The Court construes this as arguing that Smith has the medically determinable impairment of CTE. (*See* ECF Nos. 16, 25.) In general, the claimant must prove the physical or mental impairment by providing relevant evidence. *See* 20 C.F.R. §§ 404.1512; 416.912(a). Categories of evidence include objective medical evidence, medical opinions, other medical evidence,

evidence from nonmedical sources, and prior administrative medical findings. *See* 20 C.F.R. §§ 404.1513; 416.913.

While the ALJ did not address CTE specifically, the decision shows the ALJ reviewed Smith's records relating to a traumatic brain injury and post concussive syndrome and listed post concussive syndrome as one of Smith's severe impairments. (AR 26, 29, 32, 34.) Smith's medical records contain multiple references to Smith's concussions and evaluations for post concussive syndrome. (AR 1081, 1171, 1237, 1280, 1466, 1576, 1701, 2014, 2021, 2036, 2043, 2063, 2421-23, 2540.) The records show Smith has a history of concussions beginning when he was four years old and that his post concussive syndrome has improved due to the use of CBD oil and retiring. (AR 2421.) Evidence that a condition has persisted for a period of time but did not prevent the claimant from working during that time can negate a finding of a disability. *Gregory v. Bowen*, 844 F.2d 663, 667 (9th Cir. 1988). Additionally, evidence of successful treatment of Smith's post concussive syndrome weighs against a finding of disability. *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability").

Therefore, because there is evidence in the record that Smith has a lengthy history of concussions which have improved through treatment, the ALJ did not err in failing to list CTE as a medically determinable impairment. Thus, from the Court's review of the record and the reasons given by the ALJ for making his determination at step three, there is much more than a scintilla of evidence in the record to support the ALJ's decision. *Smolen*, 80 F.3d at 1279 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### 3.     The ALJ Reasonably Assessed Smith's Subjective Complaints

Next, the Court will evaluate whether the ALJ reasonably assessed Smith's subjective complaints. In determining a claimant's RFC, an ALJ must assess all the evidence (including the claimant's and others' descriptions of limitation, and medical reports) to determine what capacity the claimant has for work despite their

impairment(s). *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *Laborin*, 867 F.3d at 1153. The ALJ must take "the claimant's subjective experiences of pain" into account when determining the RFC. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *see also Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2018) (as amended); *Diedrich*, 874 F.3d at 641; *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (as amended); *Garrison*, 759 F.3d at 1014; *Molina*, 674 F.3d at 1112. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted); *Smith*, 14 F.4th at 1111 (quoting *Garrison*, 759 F.3d at 1014). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (internal quotation marks and citation omitted); *see also Leon*, 880 F.3d at 1046.

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (internal quotation marks and citation omitted); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1113 (9th Cir. 2021) ("In other words, to reject the specific portions of the claimant's testimony that the ALJ has found not to be credible, we require that the ALJ provide clear and convincing reasons relevant to that portion." (internal citations omitted)). In weighing a claimant's credibility, the ALJ may consider their reputation for truthfulness; inconsistencies either in their testimony or between their testimony and their conduct; their daily activities; work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which they complain. *See Smolen*, 80 F.3d at 1284 (citations omitted). The ALJ may

also consider inadequately explained failure to seek treatment of to follow a prescribed course of treatment. See *Rounds*, 807 F.3d at 1006.

Here, the ALJ found specific details where evidence in the record undermined Smith's subjective complaints. The ALJ noted where Smith's impairments and symptoms were controlled or improved with treatment. (*See* AR 31 ("Concerning diabetes type 2, it was noted to be controlled."); 34 (post-concussive syndrome was noted to be improved, "including his cognition and mental action," "shortness of breath and lower extremity edema had improved. He denied chest pain, palpitations or orthopnea.").) The ALJ also noted where Smith failed to comply with treatment recommendations. (*See* AR 31 (Smith was counseled to go to the ER due to reported chest pain but "declined against medical advice." (emphasis original); 32 ("it was noted the claimant continues to refuse medications." (emphasis original).) The ALJ's opinion also details numerous instances of medical providers advising Smith to stop his cigarette, marijuana, and heavy alcohol use, followed by reports of Smith failing to comply with the recommendations. (*See* AR 31- 42.) This evidence is sufficient to support the ALJ's determination that Smith's statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record. *See Smolen*, 80 F.3d at 1284 (citations omitted); *Rounds*, 807 F.3d at 1006.

### 4.     The ALJ Properly Assessed all Medical Opinions

Next, the Court will turn to the ALJ's evaluation of the medical opinions in the record. Under the revised rules, if the claim was filed after March 27, 2017, the ALJ is no longer required to defer to or assign each medical opinion a specific evidentiary weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ will articulate the persuasiveness of the medical opinions or prior administrative findings, based on factors set forth in the regulations, the most important factors being consistency and supportability. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b); *see Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective

medical evidence.' [20 C.F.R.] § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.' [20 C.F.R.] § 404.1520c(c)(2)." *Woods*, 32 F.4th 791-92.

In this case, because Smith does not levy specific objections to the ALJ's assessment of any medical opinions in his motion for remand and the Commissioner moved to affirm the decision of the ALJ, the Court will address the ALJ's treatment of the medical opinions generally to determine if they are based on proper legal standards and are supported by substantial evidence in the record. *Stout*, 454 F.3d at 1052; *see also* 42 U.S.C. § 405(g). In reviewing the medical opinions, the ALJ noted he could not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from medical sources. (AR 40.) The Court will address the ALJ's evaluation of the medical opinions of Drs. Lindenbaum, Harter, Binks, as well as the evaluation of the prior administrative medical findings of Drs. Wright, Morris, Ribeiro, and Chiang, in turn.

### i.  Dr. Lindenbaum

In finding the medical opinion of Dr. Lindenbaum unpersuasive, the ALJ noted the opinion was made more than six years prior to the alleged onset date. (AR 40-41.) The ALJ also noted Dr. Lindenbaum's decision was made for the purpose of a Workman's Compensation claim. (*Id.*) Here, it is reasonable for the ALJ to find that Dr. Lindenbaum's medical opinion was unpersuasive because it was more than six years old. *Batson*, 359 F.3d at 1193 (under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record). Additionally, the ALJ properly found Dr. Lindenbaum's medical opinion unpersuasive because medical opinions made for the purpose of establishing a Workman's Compensation claim is not binding on Social Security disability determinations. 20 C.F.R. § 404.1504.

///

### ii. Dr. Harter

The ALJ found that Dr. Harter's opinion was unpersuasive because it is conclusory and does not provide any limitations and because it was for the purpose of obtaining a handicap placard from the Department of Motor Vehicles ("DMV"). (AR 41.) As with Dr. Lindenbaum, it was reasonable for the ALJ to find Dr. Harter's opinion unpersuasive because it was made for the purpose of obtaining a handicap placard from the DMV, which is not binding on Social Security disability determinations. 20 C.F.R. § 404.1504. Additionally, finding Dr. Harter's report unpersuasive is reasonable because it did not provide limitations, meaning the ALJ cannot determine the supportability or consistency of the opinion. *Woods*, 32 F.4th 791-92.

### iii. Dr. Binks

The Commissioner argues Dr. Binks did not render an "opinion" within the meaning of the Commissioner's regulations. Although Dr. Binks evaluated Smith, he did not provide any limitations as to Smith's mental functioning in his report. (AR 683-90.) Therefore, the ALJ did not need to evaluate Dr. Binks's report as a medical opinion but did need to review the report because it constituted objective medical evidence. 20 C.F.R. § 404.1513(a)(1). The ALJ did review the medical evidence presented in Dr. Binks's report as can be seen by the ALJ's lengthy discussion of the report in his opinion. (AR 41.) Therefore, the ALJ properly evaluated the report of Dr. Binks.

### iv. Drs. Wright and Morris

Drs. Wright and Morris performed medical evaluations of Smith and found that he did not have a severe mental impairment. (AR 127-28, 146-47.) The ALJ found that these prior opinions were persuasive because they are substantially supported by the medical evidence in the record, including the substantially normal mental status examination findings throughout the record. (AR 41.) The ALJ also found the opinions of Drs. Wright and Morris were substantially consistent with his activities of daily living. (*Id.*) Here, there is substantial evidence in the record to uphold the ALJ's finding that the

medical opinions of Drs. Wright and Morris were supported and consistent with the evidence in the record. *Woods*, 32 F.4th 791-92.

### v. Drs. Ribeiro and Chiang

Drs. Ribeiro and Chiang performed medical evaluations of Smith and found that among other limitations, he could stand and or walk two hours in an eight-hour workday. (AR 129, 149.) In each case, the medical evaluations note the medical evidence which supports their conclusions. (*Id.*) The ALJ found that the opinions of Drs. Ribeiro and Chiang were consistent with other medical evidence in the record and with Smith's activities of daily living. (AR 43.) This is sufficient to show there is substantial evidence in the record to support the ALJ's determination that the medical opinions of Drs. Ribeiro and Chiang were persuasive. *Woods*, 32 F.4th 791-92.

### 5. The ALJ's Decision at Step Four is Supported by Substantial Evidence

Finally, the Court will turn to the last step of the ALJ's decision, step four. At the fourth step, the ALJ determines whether a claimant can perform their past relevant work. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f); *see also Buck*, 869 F.3d at 1048 (describing the five-step analysis). The ALJ reviews a claimant's residual functional capacity ("RFC") and the physical and mental demands of the work they have previously performed. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f); *see also Berry*, 622 F.3d at 1231. "At step four, a claimant has the burden to prove that he cannot perform his past relevant work 'either as actually performed or as generally performed in the national economy.'" *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016) (quoting *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002)).

The ALJ determined Smith has the RFC to perform sedentary work as defined by 20 CFR 404.1567(a) except:

> he is capable of walking/standing 2 hours in an 8- hour workday; occasional postural activity, except no crawling or climbing of ladders/ropes/scaffolds; frequent exposure to temperature extremes, vibrations, pulmonary irritants, and hazards; and off task 3-5% of the workday.

19

(AR 28.) After reviewing the Dictionary of Occupational Titles ("DOT"), the ALJ found that Smith could perform his past relevant work as a Financial Aid Counselor as generally performed in the national economy. (AR 42-43.) The ALJ properly made this determination because although Smith actually performed his past work at the medium exertional level, the DOT shows that the job is generally performed at the sedentary exertional level. *Stacy*, 825 F.3d at 569. The ALJ also noted that the VE testified that Smith's RFC allows for the performance of his past relevant work as generally performed. (AR 44.) Therefore, the ALJ did not err in determining Smith could perform his past relevant work as generally performed in the national economy.

## V. CONCLUSION

Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the Court finds the ALJ's decision was supported by substantial evidence and is free of legal error.

Accordingly, **IT IS THEREFORE ORDERED** that Smith's motion to remand (ECF No. 16) is **DENIED**, and the Commissioner's cross-motion to affirm (ECF No. 20) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk **ENTER JUDGMENT** and **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

DATED: January 25, 2024.

_____
**UNITED STATES MAGISTRATE JUDGE**

20